<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIC KEMMO, | |
| Plaintiff, | No. 25cv18693 (EP) (MAH) |
| v. | **MEMORANDUM ORDER** |
| ISLAND TRANSPORTATION CORPORATION, | |
| Defendant. | |

**PADIN, District Judge.**

*Pro se* Plaintiff Eric Kemmo brings this action against his former employer, Defendant Island Transportation Corporation, for racial discrimination, retaliation, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*. Plaintiff also brings a claim for retaliation in violation of New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-3. D.E. 12-1, Ex. A ("Complaint" or "Compl.") at 2–8.[1]

After Plaintiff commenced this action in the Superior Court of New Jersey, Essex County, Law Division, Defendant removed the case to this Court. D.E. 1 at 1–3 ("Notice of Removal"). Plaintiff moves to remand the case to state court. D.E. 7 ("Remand Motion" or "Remand Mot."). In a single filing, Defendant both opposes the Remand Motion and moves to dismiss the

---

[1] For the avoidance of doubt, the Court refers to the copy of the Complaint filed at D.E. 12-1 because it includes several exhibits initially filed by Plaintiff in state court before this action was removed. And because the Complaint contains several exhibits that are not separated into individual filings, the Court uses the page numbers automatically generated by CM/ECF for ease of reference.

Complaint. D.E. 11 ("Motion to Dismiss" or "MTD").[2]  Plaintiff both replies in support of remand and opposes the Motion to Dismiss in a single filing, D.E. 16 ("Remand Reply"), and Defendant replies to Plaintiff's Remand Reply, D.E. 17 ("MTD Reply").

While the Remand Motion and Motion to Dismiss were pending, Plaintiff filed three more letters requesting the Court remand this action.  D.Es. 23, 25–26.  Defendant opposed the first of these additional filings.  D.E. 24.

The Court decides both motions without oral argument.  *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b).  For the reasons explained below, the Court will **DENY** the Remand Motion, **GRANT** the Motion to Dismiss, and **DISMISS** the Complaint *without prejudice*.

## I.     BACKGROUND

### A.     Factual Background[3]

Plaintiff worked for Defendant as a full-time truck driver for five years before his termination in December 2024.  Compl. at 6.  In the year leading up to his termination (between December 2023 and July 2024), Plaintiff emailed the owner of Defendant four times complaining about his supervisor.  *Id*. at 14–18 ("Internal Complaints").  In these emails, Plaintiff complained of "harassment, discrimination and retaliation," as well as his manager's disparate enforcement of company policy.[4]  *Id.* at 14.  Specifically, Plaintiff claimed his manager was violating company policy by allowing drivers with less experience to select their shifts before him.  *Id.*  Plaintiff also noted in these emails that treatment got worse after he sent his first complaint.  In particular,

---

[2] The notice of motion is filed at D.E. 10.

[3] The facts in this section primarily derive from the Complaint's well-pled factual allegations and the attachments thereto, which the Court presumes to be true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] Plaintiff also filed grievances with the United States Service Workers Union, IUJAT, Local 355 (the "Union") that mirror his Internal Complaints.  Compl. at 21–27.

Plaintiff claims his manager threatened to fire him, assigned him the least desirable off-days, and ordered the safety supervisor to observe him over ten times in three months, "looking for anything to use against [him] to get rid of [him]." *Id.* at 16–17. Plaintiff did not mention race in any of these emails. *See id.* at 14–18.

In December 2024, Plaintiff was fired after a physical altercation with an unrelated third party. Compl. at 13 ("Termination Letter"). Pursuant to the terms of a collective bargaining agreement ("CBA") to which Plaintiff was subject as a member of the Union, his challenge to his termination was sent to arbitration. D.E. 12-2, Ex. B ("Arbitration Opinion") at 1–2. In June 2025, an arbitrator determined that Plaintiff brandished a crowbar in the altercation that led to his termination, and accordingly, that Defendant fired him "for good cause pursuant to the [CBA]." *Id.* at 9. Plaintiff maintains that he did not use a crowbar and that his termination was retaliation for his Internal Complaints. Compl. at 4, 7.

Following his termination, but before the arbitration hearing, Plaintiff filed charges against his employer through the U.S. Equal Employment Opportunity Commission ("EEOC"). Compl. at 40–43. On February 3, 2025, the EEOC dismissed his charges for failure to state a claim and notified Plaintiff of his right to sue within ninety days. Compl. at 36–39 (the "Right to Sue Letter" or the "Letter").

Plaintiff hired attorney Alan Genitempo to handle his suit. *See* Compl. at 28–35 ("Plaintiff-Attorney Emails").[5] In March 2025, Plaintiff reminded Genitempo about the ninety-day deadline to sue. *Id*. at 32. Genitempo confirmed that he would file the lawsuit on time. *Id*. at 33–34. A month later, Genitempo sent Plaintiff an email with a link to the arbitration hearing, and again

---

[5] Plaintiff communicated with both his attorney, Alan Genitempo, and a paralegal working with Genitempo, in these emails.

assured Plaintiff he would timely commence the suit. *Id.* at 35. However, a few days after this email, on April 24, 2025, Genitempo communicated to Plaintiff, "I AM NOT filing the complaint yet. We do not have to since we may be filing in state court not federal court. Your case is not ready for filing because your appeal isn't even finished." *Id.* at 31.

For reasons not clear from the pleadings and documents before the Court, Plaintiff, now proceeding *pro se*, commenced this suit in November 2025—*i.e.*, over six months after these exchanges between himself and Genitempo. Compl. at 3. Plaintiff offers no explanation for his delayed filing other than alleging that Genitempo was "compromised" by Defendant to drop his case. *Id.* at 7.

Based on the above conduct, Plaintiff brings claims for: (1) discrimination based on race; (2) retaliation; and (3) wrongful termination[6] in violation of Title VII. And, liberally construing Plaintiff's *pro se* filings, Plaintiff also asserts a claim for retaliation in violation of CEPA. *See* Remand Mot. at 2.

### B.    Procedural History

On November 21, 2025, Plaintiff filed the Complaint in the Superior Court of New Jersey, Essex County, Law Division. Defendant filed the Notice of Removal on December 16, 2025. On December 29, 2025, Plaintiff filed the instant Remand Motion. Defendant simultaneously opposed the Remand Motion and filed its Motion to Dismiss on January 9, 2026. Plaintiff filed his Remand Reply on January 12, 2026, and Defendant filed its MTD Reply the following day on January 13, 2026.

---

[6] The Court identifies a wrongful termination cause of action on behalf of *pro se* Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

4

## II.    REMAND MOTION

United States district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. A defendant may remove to federal court a civil action originally filed in state court if the federal court may exercise original jurisdiction over the matter.  28 U.S.C. § 1441(a).  After removal, a plaintiff may move to remand the case if the removal was defective, including that removal was untimely, or the district court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c); *see also Korea Exch. Bank, New York Branch v. Trackwise Sales Corp.*, 66 F.3d 46, 48 (3d Cir. 1995).  The removal statute is "strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (citation omitted).  The removing party bears the "burden of showing [ . . . ] that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

*Trinity Life Ins. Co. v. 248 Brynmore Rd LLC*, No. 23-20548, 2024 WL 3070205, at *3 (D.N.J. June 20, 2024).

To remove an action to federal court, a party must file "a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure," which contains "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446(a).  The notice of removal must be filed within thirty days after receipt by or service on that defendant of the initial pleading or summons, whichever period is shorter.  *Id.* § 1446(b)(1).  When a civil action is removed pursuant to 28 U.S.C. § 1446(a), all properly joined and served defendants must join in or consent to the removal.  *Id.* § 1446(b)(2)(A).

"As the party asserting federal jurisdiction by way of removal, [Defendant] bears the burden of establishing that subject matter jurisdiction exists at all stages in which the case is properly before the federal court."  *Citigroup Mortg. Loan Tr. 2021-A v. Adams*, No. 25-14231, 2025 WL 4632824, at *3 (D.N.J. Oct. 10, 2025), *report and recommendation adopted*, No. 25-14231, 2026 WL 642113 (D.N.J. Mar. 6, 2026) (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).  "District courts have federal question subject matter

5

jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331). Indeed, for a claim to arise under federal law, the complaint "must establish 'either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of substantial question of federal law.'" *Id.* (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

Defendant has met its burden. Plaintiff brings claims under Title VII, a federal statute. Therefore, the Court has original jurisdiction over those claims, and in turn, jurisdiction over this action. The Court also has supplemental jurisdiction over Plaintiff's CEPA claim pursuant to 28 U.S.C. § 1367. *See Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (affirming supplemental jurisdiction over CEPA claims arising out of same facts as federal-question anchor claim).

Defendant has also timely complied with the procedural removal requirements—Defendant removed this action to federal court within thirty days of receiving a copy of the summons and Complaint on November 25, 2025, and filed a proper notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* Notice of Removal. Because the Court concludes that Defendant properly removed this action to federal court, the Court will **DENY** Plaintiff's Remand Motion.

## III.    MOTION TO DISMISS

### A.    Legal Standard

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and "determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)

6

(quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The defendant bears the burden of showing that a plaintiff has failed to state a claim. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In other words, when determining whether to dismiss a complaint, the Court does not need to accept as true allegations in a complaint that are directly contradicted by authenticated documents that the complaint relies on. *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)).

Finally, given Plaintiff's *pro se* status, the Court will construe his complaint liberally and, to the extent it is possible, will identify a cause of action even if Plaintiff does not formally assert it. *See Erickson*, 551 U.S. at 93–94.

## B.    Analysis

Defendant correctly notes that Plaintiff has failed to respond to several arguments raised in Defendant's Motion to Dismiss. MTD Reply at 1–2. Although the Court could deem those arguments conceded, the Court declines to do so here in light of Plaintiff's *pro se* status. *See Thomas v. Value Realty*, No. 15-7877, 2016 WL 9776141, at *1 (D.N.J. Nov. 30, 2016) ("The

Third Circuit recommends that in the case of a *pro se* litigant, a district court address a case on the merits even if a motion is unopposed.").  Nevertheless, after considering the merits of Plaintiff's claims, the Court concludes he fails to state a claim upon which relief can be granted, and therefore, the Court will **GRANT** Defendant's Motion to Dismiss.

### 1.     *Plaintiff's Title VII claims are time-barred*

> A plaintiff bringing an employment discrimination claim under Title VII must comply with the procedural requirements set forth in 42 U.S.C. § 2000e-5.  Pursuant to that provision, a Title VII complainant has ninety days from the receipt of an EEOC right-to-sue letter to bring an action in court.  *See* 42 U.S.C. § 2000e-5(f)(1); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999).

*Williams v. E. Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010).

It is unclear exactly when Plaintiff received the Right to Sue Letter from the EEOC.  In the absence of a known receipt date, the ninety-day statute of limitations begins three days after the right-to-sue letter was mailed.  *See* Fed. R. Civ. P. 6(d); *Seitzinger*, 165 F.3d at 239.

Here, the EEOC issued the Right to Sue Letter on February 3, 2025.  *See* Right to Sue Letter.  Therefore, Plaintiff is presumed to have received the Letter on February 6, 2025.  In turn, he was required to file his suit by May 7, 2025.  He did not.  *See* Dkt.  In fact, Plaintiff did not do so until November 21, 2025, over six months later.  *See* Compl. at 3.

The ninety-day time limit "is akin to a statute of limitations rather than a jurisdictional bar. Therefore, the time limit is subject to tolling." *Seitzinger*, 165 F.3d at 239–40; *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (noting time limits in Title VII claims are subject to equitable tolling).  A court may apply equitable tolling to the ninety-day deadline: (1) "when a claimant received inadequate notice of [his] right to file suit," (2) "where a motion for appointment of counsel is pending," (3) "where the court has misled the plaintiff into believing that [he] had done everything required of [him]," (4) "when the defendant has actively misled the plaintiff," (5) "when the plaintiff 'in some extraordinary way' was prevented from asserting [his]

8

rights," or (6) "when the plaintiff timely asserted [his] rights in the wrong forum." *Formato v. Mount Airy #1, LLC*, No. 19-2237, 2021 WL 3403543, at *2 (M.D. Pa. Aug. 4, 2021) (citing *Seitzinger*, 165 F.3d at 240 (citations omitted)).

But despite its apparent availability, the doctrine of equitable tolling should be applied sparingly. As the Third Circuit explained:

> Although the Supreme Court has repeatedly recognized the equitable tolling doctrine, it also has cautioned that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." [*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)]. We too have exercised caution in using the doctrine. In *Mosel* [*v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986)], we emphasized the importance of adhering to the EEOC's ninety-day filing period, holding that "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day."

*Seitzinger*, 165 F.3d at 240 (citation modified). Thus, absent a legitimate reason for tolling, this Court will strictly adhere to the ninety-day deadline. *See Mosel*, 789 F.2d at 253 (dismissing Title VII claims filed ninety-one days after an EEOC right-to-sue letter was received); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) ("[I]n the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed."). Plaintiff bears the burden of demonstrating that equitable tolling is warranted. *Formato*, 2021 WL 3403543, at *2.

While Plaintiff does not expressly invoke the doctrine of equitable tolling, he does allege facts sufficient for the Court to consider its applicability. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391–392 (3d Cir. 1994) (reasoning that allegations which "essentially charge" a basis for equitable tolling are sufficient to warrant an analysis in the context of a 12(b)(6) motion to dismiss), *rev'd on other grounds by*, *Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc), *aff'd*, 589 U.S. 8 (2019). Specifically, Plaintiff shows he informed his attorney

Genitempo of the ninety-day deadline and even received assurances from Genitempo that he would timely file this suit.  Plaintiff-Attorney Emails at 32–34.  And, without explaining more, Plaintiff claims Genitempo was "compromised" by Defendant and pressured to drop his suit.  Compl. at 7.

Even accepting Plaintiff's allegations regarding Genitempo as true, they are still not enough to justify equitable tolling.  The Third Circuit has made clear that *gross* attorney neglect may warrant equitable tolling when a client diligently pursues his claim:

> In Title VII cases, equitable tolling does "not extend to what is at best a garden variety claim of excusable neglect by an attorney." [*Seitzinger*, 165 F.3d at 241]. Further, "mere negligence by an attorney is not generally found to rise to the extraordinary circumstance required for equitable tolling." [*Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164 (3d Cir. 2012)].  Simply missing a deadline, without more, is not an example of an extraordinary circumstance sufficient for equitable tolling.  For example, in *Baker v. Office Depot, Inc.*, [115 F. App'x 574, 577 (3d Cir. 2004)], the plaintiff's attorney missed the deadline to file a charge of discrimination with the EEOC.  On appeal, the *Baker* panel held that the attorney's mistake was an example of garden variety neglect.  The panel added that this sort of "[m]ere inadvertence is simply not enough" to constitute an extraordinary circumstance required for equitable tolling.
>
> In contrast with the *Baker* panel, in *Seitzinger*, the Third Circuit held that equitable tolling may be appropriate if a client persistently questions their attorney regarding the filing of a complaint and the attorney affirmatively misrepresents that the complaint has been filed.

*Formato*, 2021 WL 3403543, at *2–3 (citation modified).

"[E]quitable tolling will not apply unless the plaintiff 'exercised due diligence in pursuing and preserving her claim.'" *Perry v. Pennsylvania*, 328 F. App'x 785, 788 (3d Cir. 2009) (quoting *Santos v. United States*, 559 F.3d 189, 197–98 (3d Cir. 2009)).  For instance, the district court in *Rockmore v. Harrisburg Property Service* found that the plaintiff had not exercised sufficient due diligence when she filed her lawsuit almost ninety days after her deadline had passed, and one month after her attorney informed her that he would not file the complaint on her behalf.  No. 10-2652, 2012 WL 951428, at *4 (M.D. Pa. Mar. 20, 2012).

Like the plaintiff in *Rockmore*, Plaintiff has failed to show "extraordinary" circumstances to warrant equitable tolling. For one, Plaintiff has not demonstrated gross attorney neglect or sufficient due diligence in pursuing his claims. Indeed, the pleadings do not allege the kind of affirmative misrepresentation that carried the day in *Seitzinger*. Put differently, unlike in *Seitzinger*, where the attorney affirmatively misrepresented filing the plaintiff's lawsuit, here, the last email in the record from Genitempo to Plaintiff, sent on April 24, 2025, plainly states, "I AM NOT filing the complaint yet," and "[y]our case is not ready for filing because your appeal isn't even finished." Plaintiff-Attorney Emails at 31. Critically, Genitempo sent that email *before* the ninety-day window was up. Without more information as to why Genitempo never filed a complaint—or what happened in late April 2025—the Court, like the *Rockmore* court, will not find gross neglect.

Further, although Plaintiff claims his attorney "was compromised by [Defendant] to drop [his] case," he does not elaborate on this accusation, nor does he expressly cite it as justification for his untimely filing. Compl. at 7. The Court does not accept this conclusory assertion as true because there is no "factual matter" to render it "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

But, even assuming Genitempo was grossly negligent or "compromised," Plaintiff's unexplained inaction between the end of April and November demonstrates a lack of diligence. Plaintiff knew about the ninety-day deadline, knew Genitempo was not going to file his lawsuit before the deadline was up, and still filed this suit six months late. Comparing Plaintiff's conduct to the plaintiff in *Rockmore* (who did not exercise adequate due diligence when she filed less than three months after her deadline), or the plaintiff in *Seitzinger* (who met with ten to fifteen lawyers after her attorney abandoned her case to see whether her dismissed case could be reinstated, and

11

then managed to file her complaint only a few days after the filing deadline), the Court finds Plaintiff was not adequately diligent in pursuing his claims.[7]

"Because Plaintiff's attorney's conduct does not rise to the level of gross misconduct discussed by the Third Circuit in *Seitzinger*, and because Plaintiff was not sufficiently diligent in assuring that [his] complaint was filed on time, the Court finds that application of the equitable tolling doctrine would be unwarranted in this case." *Rockmore*, 2012 WL 951428, at *4. Accordingly, the Court will **DISMISS** Plaintiff's Title VII claims ***without prejudice***.[8]

### 2.      *Plaintiff fails to state a CEPA claim*

CEPA is a "whistle-blower" statute designed to protect employees who speak out against employer actions that violate law or public policy. *Stapleton v. DSW, Inc.*, 931 F. Supp. 2d 635, 638 (D.N.J. 2013) (citations omitted). To state a CEPA claim, a plaintiff must plausibly allege that: (1) he reasonably believed his "employer's conduct was violating a law, rule or regulation promulgated pursuant to law, or a clear mandate of public policy"; (2) he performed a protected "whistle-blowing" activity; (3) "an adverse employment action was taken against him"; and (4) "a causal connection exists between the whistle-blowing activity and the adverse employment action." *Myers v. Advanced Stores Co. Inc.*, No. 19-18183, 2020 WL 2744632, at *3 (D.N.J. May 27, 2020) (quoting *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003)).

---

[7] Plaintiff followed up once with Genitempo to remind him of the ninety-day deadline. *See* Plaintiff-Attorney Emails at 32. Considering the circumstances in their totality, this alone does not demonstrate due diligence sufficient to warrant equitable tolling. *Cf. Seitzinger*, 165 F.3d at 241 (holding that plaintiff's *extreme* diligence in pursuing her claims justified equitable tolling).

[8] The Court dismisses the Complaint *without prejudice* because there is a possibility that an amended complaint could allege facts that demonstrate equitable tolling of the ninety-day deadline is warranted. *See Alpha Cepheus, LLC v. Chu*, No. 18-14322, 2019 WL 7047206, at *10 (D.N.J. Dec. 20, 2019).

12

After reviewing Plaintiff's filings, the Court concludes that Plaintiff has failed to state a CEPA claim.  Instead of pleading fact-based allegations to support each element, Plaintiff makes conclusory statements.  *See, e.g.*, Remand Reply at 2 ("I engaged in whistleblowing by reporting violations and public health concern[s].  The employer terminated me because I was whistleblowing.  There was a causal connection between the protected activities and an adverse employment action.").  This formulaic recitation of the elements is a textbook example of legal conclusions that a court should give no weight.  *See Twombly*, 550 U.S. at 555 (explaining that a plaintiff is obligated to provide "more than labels and conclusions," and that "a formulaic recitation of the elements of a cause of action will not do").

Moreover, the few allegations that Plaintiff does make are flawed as well.  With respect to the first element—a reasonable belief that his manager's conduct was violating a law, rule, regulation or clear mandate of public policy—Plaintiff identifies no law, rule, regulation or public policy that was allegedly violated.  In fact, it appears the conduct Plaintiff complains of is related to Defendant's internal corporate policies.[9]  But CEPA does not cover "blowing the whistle" on internal company policies.  *See Clark v. Acme Markets, Inc.*, No. 11-2812, 2014 WL 714898, at *9 (D.N.J. Feb. 24, 2014) ("[A] violation of company rules does not satisfy any of the categories

---

[9] The Court refers to Plaintiff's Internal Complaints against his supervisor as his "complained-of conduct" because Plaintiff alleges that he was retaliated against after sending these emails.  *See* Internal Complaints (containing accusations that Defendant gave drivers with less experience than Plaintiff better shifts in violation of a seniority-based company policy).

described in [CEPA].").[5]   Therefore, Plaintiff cannot base his CEPA claim on the Internal Complaints to Defendant's owner.[6]

Plaintiff also fails to plausibly allege the fourth element of his CEPA claim—a causal relationship between his Internal Complaints and his termination.  As noted above, to survive a motion to dismiss, a plaintiff must plead facts that allow the Court to infer that "it is more likely than not that" the adverse action was "based on impermissible reasons." *Bowles v. City of Camden*, 993 F. Supp. 255, 265 (D.N.J. 1998).  Circumstantial evidence, including the temporal proximity between the protected activity and adverse action, can be used to make this inference.  *Robles v. U.S. Env't Universal Servs., Inc.*, 469 F. App'x 104, 107 (3d Cir. 2012).

Plaintiff has not done so here.  He offers nothing besides blanket statements to connect his Internal Complaints to his termination.  His threadbare allegations are not enough.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  In other words, Plaintiff must plead facts that allow the Court to draw the inference that "it is more likely than not that" his termination from Defendant was "based on impermissible reasons." *Bowles*, 993 F. Supp. at 265.

---

[5] The fact that CEPA does not protect all whistle-blowing activity is also relevant to the second element of a CEPA claim.  For Plaintiff to allege he engaged in a whistle-blowing activity protected under CEPA, he must connect the Internal Complaints (his whistle-blowing activity) to a reasonable belief that Defendant violated a law, rule, regulation, or clear mandate of public policy. *See* N.J. Stat. Ann. § 34:19-3(a).  Because he does not do that, the Court concludes Plaintiff has failed to sufficiently allege his whistle-blowing activity was covered by CEPA.

[6] And to the extent that Plaintiff tries to base a CEPA claim off racial discrimination, he fails to do so because he does not mention race at all in his Internal Complaints; he only states—in a conclusory fashion—that his manager is guilty of harassment, discrimination, and retaliation. CEPA was not designed to prosecute individual discrimination claims—those are covered by Title VII. *See Smith v. Travelers Mortg. Servs.*, 699 F. Supp. 1080, 1083 (D.N.J. 1988) ("[I]ndividual gender discrimination claims are protected by Title VII and thus most likely were not intended by the state legislature to be protected by CEPA.").

In sum, Plaintiff has failed to adequately plead either the first or fourth elements of his CEPA claim.  Accordingly, the Court will **DISMISS** his CEPA claim *without prejudice*.

## IV.    CONCLUSION AND ORDER

For the reasons above,

**IT IS**, on this 9th day of July, 2026,

**ORDERED** that Plaintiff's Remand Motion, D.E. 7, is **DENIED**; and it is further

**ORDERED** that Defendant's Motion to Dismiss, D.E. 10, is **GRANTED**; and it is further

**ORDERED** that the Complaint, D.E. 1-1, is **DISMISSED** *without prejudice*; and it is further

**ORDERED** that Plaintiff may file an amended complaint within **30 days** of this Order;[10] and it is finally

**ORDERED** that the Clerk of Court shall send Plaintiff a copy of this Memorandum Order via regular mail.

Evelyn Padin, U.S.D.J.

---

[10] The Court cautions Plaintiff to re-plead only those claims he has a good faith basis for believing he can cure the deficiencies outlined above or the Court may dismiss those claims *with prejudice*.